# EXHIBIT C

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.  SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
CIVIL ACTION NO. _____

---

ISLAND OASIS FROZEN COCKTAIL CO., INC., )
        Plaintiff )
)
v. )
)
NUCO USA LLC, )
        Defendant )
)

---

## COMPLAINT

### Nature of Action

1. This is an action for declaratory judgment arising out of the Defendant's assertion of a series of non-meritorious and frivolous claims against the Plaintiff.

### Parties

2. The Plaintiff, Island Oasis Frozen Cocktail Co., Inc. ("Island Oasis"), is a duly organized Massachusetts corporation having a principal place of business in Walpole, Norfolk County, Massachusetts.

3. The Defendant, NUCO USA LLC ("NUCO"), is a limited liability company having a principal place of business in Visalia, California.

### Jurisdiction and Venue

4. This Court has jurisdiction over this matter pursuant to the provisions of M.G.L. c. 212, §4 and M.G.L. c. 231A, §1.

5. NUCO is subject to the jurisdiction of this Court pursuant to the Massachusetts Long-Arm Statute, M.G.L. c. 223A, §3, inasmuch as it has transacted business in Massachusetts and has contracted to supply services and products in Massachusetts.

6. Venue is appropriate before this Court as the Plaintiff has a principal place of business in this county.

## Facts

7. At all times relevant hereto, Island Oasis has been engaged in the business of producing and distributing quality beverage products and innovative drink-making equipment.

8. On information and belief, NUCO was formed in 2002 for the purpose of developing and marketing "smoothie bars." (i.e. locations for the mixing and sale of smoothie drink products to retail customers). NUCO established relations with franchisees for the distribution and sale of smoothie bar products, originally under the tradename "Nutrition Connection."

9. In 2005, Island Oasis entered into discussions with NUCO to develop a turnkey smoothie bar concept to be presented to potential customers, including health clubs, gymnasiums and resorts. The smoothie bar and its beverage products, to be sold under the name "Power Blendz", was to be made from specialized and patented machinery designed and supplied by Island Oasis and combining juice products of Island Oasis with powder protein supplements to be supplied by NUCO. As of the time of these discussions, Island Oasis was already doing substantial business with health clubs, gymnasiums and resorts, selling them juice products with the specialized equipment for mixing and dispensing those products. Also as of that time, NUCO had seen a decline in its franchise base from a high point of 22 to approximately 10 franchisees.

10. During the course of the discussions, NUCO proposed that it be paid by Island Oasis for the efforts of its co-founders, Jacob Barber and Charles Davis, in developing the turnkey concept. NUCO also proposed that Island Oasis charge customers an operational fee of $49-100 per month, and that it also pay NUCO 15% of the price of Island Oasis fruit mix sold to customers.

11. Island Oasis never agreed to any of these payment concepts, either orally or in writing.

12. Instead, Island Oasis and NUCO entered into a "Joint Venture Agreement" dated November 21, 2006, a copy of which is appended hereto Exhibit 1 (the "JV Agreement"). The

express purpose of the Joint Venture Agreement was for the "testing, the performance of the Power Blendz juice bar concept created by NUCO in order to create long-term projections of its profitability to Island Oasis." (Joint Venture Agreement, Section 2)

13. Pursuant to Section 4 of the Joint Venture Agreement, Island Oasis and NUCO were expressly entitled to retain "all profits generated by their individual product of sales." Nowhere in the Joint Venture Agreement was there any provision for sharing of profits. Instead, on the one side Island Oasis proceeded to sell juice products to customers, as well as leasing of its patented specialized machinery, and on the other side NUCO was to sell to these customers its protein supplements in powder form, which was to be combined with the Island Oasis juice products.

14. From 2006 to 2009, almost exclusively as a result of the sales and marketing efforts of Island Oasis, the number of outlets to which Island Oasis and NUCO were able to sell their respective products increased to over 500, several of which were located in Massachusetts. The customers included various entities that were already a part of the Island Oasis customer base for other of its specialty branded beverage products, and numerous additional customers developed by Island Oasis, including gymnasiums, resorts, universities, coffee shops and even Royal Caribbean cruises. Among the additional customers added was the Sheetz Convenient Store chain operating out of the Northeast. By dramatically expanding the customer base, Island Oasis effectively permitted not only itself but also NUCO to dramatically expand sales of products.

15. Pursuant to Section 7, the Joint Venture Agreement had an initial one-year term, to be automatically renewed each year thereafter unless either party gave written notice to the other party not to renew.

16. In 2009, Island Oasis made a business decision to terminate its relationship with NUCO under the Joint Venture Agreement. In particular, Island Oasis based its decision as a result of various shortcomings by NUCO in connection with its performance under the Joint Venture Agreement:

(a) NUCO was consistently late in supplying product to customers, resulting in numerous complaints from customers;

(b) NUCO did not properly and timely attend to customer requests for service;

(c) NUCO failed to devote the necessary human resources to work with Island Oasis to further develop the national market.

17. Island Oasis gave proper written notice to NUCO in October, 2009 of its decision not to renew the Joint Venture Agreement. Further pursuant to Section 7 of the Joint Venture Agreement, upon such termination by notice, "the Joint Venture shall be terminated as well and all Parties' obligations under this Agreement with respect to the operation and administration of the Joint Venture shall no longer have force and effect."

18. As of the time of notice of termination, Island Oasis made clear to NUCO that it would be proceeding with sales of its juice products and equipment to customers – particularly to those who were relying upon continued supply of this product line. Island Oasis did not, in any way, attempt to restrict NUCO from selling its own protein supplements to these same customers or to any other customers or propects, and on information and belief, NUCO did continue sales of its product to customers through an affiliation with another entity, Schwartz Labs.

19. In late 2010, long after the formal termination of the Joint Venture Agreement, NUCO, through counsel, began to assert claims against Island Oasis. In particular, NUCO asserted claims against Island Oasis for payment purportedly attributable to the time and efforts of NUCO's co-founders, for the failure to charge Power Blendz customers an operational fee, and for the failure to pay NUCO a 15% fee for every case of Island Oasis juice mix sold, notwithstanding the fact that Island Oasis had never agreed to any of these payment obligations and notwithstanding the fact that the Joint Venture Agreement never called for any of these payments.

20. In addition, NUCO, through counsel, asserted claims against Island Oasis for alleged losses of business opportunity, notwithstanding the fact that as a result of the sales and marketing efforts of Island Oasis, NUCO was permitted to dramatically expand its customer base.

21. NUCO also asserted claims against Island Oasis for amounts spent on protein supplements that it is allegedly unable to sell, notwithstanding the fact that Island Oasis has

never prevented NUCO from proceeding to make sales to the customer base that had been dramatically expanded by Island Oasis.

22. More generally, NUCO has asserted claims against Island Oasis based upon alleged breaches of oral contract, alleged fraud and misrepresentation, alleged breaches of fiduciary duty, alleged trademarks violations and alleged unfair competition practices, notwithstanding that all such claims are completely non-meritorious and frivolous.

23. At all times relevant hereto, Island Oasis has denied that it has any liability whatsoever to NUCO and had demonstrated to NUCO that there is no legal or factual basis for any of NUCO's claims. Notwithstanding the foregoing, NUCO has continued its threats to assert claims against Island Oasis.

### Action for Declaratory Relief

24. Paragraphs 1-23 are incorporated herein and made a part hereof.

25. Pursuant to the provisions of Chapter 231A of the Massachusetts General Laws, there is an actual case and controversy between the parties that is adjudicable by this Court.

26. Island Oasis is entitled to a judgment from this Court declaring that it has no liability whatsoever to NUCO for any claim that has been threatened or could otherwise be asserted by NUCO.

### Prayers for Relief

WHEREFORE, Island Oasis respectfully requests that this Court:

1. Enter a declaratory judgment in its favor confirming that Island Oasis has no legal liability whatsoever to NUCO or to any principal of NUCO;

2. Award Island Oasis its reasonable attorneys fees and costs; and

3. Grant such other relief as may be deemed just and appropriate.

## Jury Trial Demand

The Plaintiff demands a trial by jury on all issues so triable.

                        ISLAND OASIS FROZEN COCKTAIL
                        CO., INC.
                        By its attorney,

                        _/s/_____
                        Lawrence G. Green BBO # 209060
                        Joshua Cook BBO # 660346
                        Burns & Levinson, LLP
                        125 Summer Street
                        Boston, MA 02110
                        617-345-3000
                        lgreen@burnslev.com
                        jcook@burnslev.com

                                         01534569.DOCX\

## JOINT VENTURE AGREEMENT

THIS AGREEMENT (the "Agreement") is made as of the __21__ day of __November 2006__, by and between Island Oasis Frozen Cocktail Co., Inc., and NUCO USA LLC together referred to as The Parties.

WHEREAS Island Oasis is engaged in the business of producing quality frozen drink mixes and innovative drink making equipment.

WHEREAS the NUCO USA is engaged in the business of producing turn key juice bar concepts and dietary supplements;

WHEREAS the Parties wish to join together in a joint venture for the purpose of increasing frozen drink mix sales and establishing customers in new markets.

NOW THEREFORE BE IT RESOLVED, in consideration of the mutual covenants, promises, warranties and other good and valuable consideration set forth herein, the Parties agree as follows:

1. **Formation.** The joint venture formed pursuant to this Agreement (the "Joint Venture") shall do business under the name Power Blendz Market Test, and shall have its legal address at __2201 N. University St, Visalia, CA 93291__. The Joint Venture shall be considered in all respects a joint venture between the Parties, and nothing in this Agreement shall be construed to create a partnership or any other fiduciary relationship between the Parties.

2. **Purpose.** The Joint Venture shall be formed for the purpose of testing the performance of the Power Blendz juice bar concept created by NUCO in order to create long term projections of it's profitability to Island Oasis Inc.

3. **Contributions.**

   a. The Parties shall each make an initial contribution to the Joint Venture according to the following terms:

      i. Island Oasis's Contribution: Island Oasis will pay for all travel expenses related to the training of Island Oasis's staff and national marketing expenses. Island Oasis will also contribute the resources of its marketing department for the production of all Power Blendz juice bar concept menus and related marketing materials. Finally, Island Oasis will contribute access to its products at a maximum of full list wholesale price to all business owners operating the Power Blendz system.

      ii. NUCO USA's Contribution: The NUCO USA will contribute information related to the inventions, business planning, copyrighted material, recipes, and all other components of the trade marked Power Blendz juice bar concept. The NUCO USA will contribute unlimited consultation, training, and general management support.

*Joint Venture Agreement*  1

P.02

The NUCO USA will contribute labor related to necessary national training, marketing endeavors, and trade shows. Finally, the NUCO USA will contribute access to its products at a maximum of full list wholesale price to all business owners operating the Power Blendz system.

4. **Distribution of Profits.** The Parties shall retain all profits generated by their individual product sales.

5. **Management.** The Joint Venture shall be managed according to the following terms: A steering committee consisting of Mike Herbert, Mark Malkin, and Jacob Barber. Each committee member will have 33% voting power. Mark Malkin is appointed as the chief executive officer of the venture and is responsible for the day to day operations.

6. **No Exclusivity.** Neither Party shall be obligated to offer any business opportunities or to conduct business exclusively with the other Party by virtue of this Agreement.

7. **Term.** This Agreement shall remain in full force and effect, for a period of twelve months from the date of this Agreement (the "Initial Term"). Upon the expiration of the Initial Term, the Agreement shall be automatically renewed for successive periods of one year each (each, a "Renewal Term"), unless either Party gives written notice of termination to the other Party at least 30 days prior to (but in no case more than 60 days prior to) the expiration of the Initial Term or of any Renewal Term. At any time, this Agreement may also be terminated by mutual written consent of the Parties. If this Agreement either expires or is terminated, the Joint Venture shall be terminated as well, and all Parties' obligations under this Agreement with respect to the operation and administration of the Joint Venture shall no longer have force or effect.

8. **Confidentiality.** Any proprietary information pertaining to either Party's business to which the other Party is exposed as a result of the relationship contemplated by this Agreement shall be considered to be "Confidential Information." Neither Party may disclose, use, or modify any Confidential or Proprietary Information to any person or entity, except as required by law, without the express written consent of the affected Party.

9. **Further Actions.** The Parties hereby agree to execute any further documents and to take any necessary actions to complete the formation of the Joint Venture.

10. **Assignment.** Neither Party may assign or transfer their respective rights or obligations under this Agreement without prior written consent from the other Party. Except that if the assignment or transfer is pursuant to a sale of all or substantially all of a Party's assets, or is pursuant to a sale of a Party's business, then no consent shall be required. In the event that an assignment or transfer is made pursuant to either a sale of all or substantially all of the Party's assets or pursuant to a sale of the business, then written notice must be given of such transfer within 10 days of such assignment or transfer.

*Joint Venture Agreement*

2

12-28-10;11:31AM;                                         ;5597347848           # 9/ 13
OCT-18-2010 MON 04:12 PM BAKER MANOCK JENSEN    FAX NO. 559 4325620           P. 15/16
NOV-22-2006  10:36                                                     P.03

11. **Governing Law.** This Agreement shall be construed in accordance with, and governed in all respects by, the laws of the State of ___California___, without regard to conflicts of law principles.

12. **Counterparts.** This Agreement may be executed in several counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one agreement.

13. **Final Agreement.** This Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof. This Agreement may be modified only by a further writing that is duly executed by both parties.

14. **Severability.** If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

15. **Notice.** Any notice required or otherwise given pursuant to this Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, or delivered by overnight delivery service, addressed as follows:

If to Island Oasis:

    Island Oasis Frozen Cocktail Co. Inc.
    141 Norfolk Street
    Walpole, MA 02081

If to NUCO USA:

    NUCO USA LLC.
    2201 North University St.
    Visalia, CA 93291

If to Joint Venture:

    _____
    _____
    _____

16. **Headings.** The headings for sections herein are for convenience only and shall not affect the meaning of the provisions of this Agreement.

17. **Entire Agreement.** This Agreement constitutes the entire agreement between Island Oasis and NUCO USA, and supersedes any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Agreement.

*Joint Venture Agreement*

3

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first above written.

ISLAND OASIS

Signature: *Michael Hebert*  PRESIDENT

Print Name: J. Michael Hebert

Title: Pres. O.O.

NUCO USA

Signature: [signature]  PRESIDENT/CEO

Print Name: Jacob Barber  PRESIDENT/CEO

Title: PRESIDENT/CEO

Joint Venture Agreement